*20 OPINION.
Murdock :
The petitioner accrued on its books for 1916 an amount of $15,000, representing payments which it was required to make and which it made under a lease. Likewise, for 1917, it accrued similar items in the amount of $30,000, and eventually paid this amount. These amounts were taken as deductions for rent on its income-tax returns for these respective years. The accruals and the deductions were proper under the circumstances which the record shows then existed.
In 1918 some, but not all, of the payments provided for in the lease were accrued. The petitioner believed during that year that it would never be able to pay the rent in accordance with the terms of the first lease and so notified the lessors. Negotiations were conducted for a new lease at a lower rental and such a new lease was entered into. The petitioner constantly maintained during these negotiations that it was unable to pay the unpaid rent due under the existing lease and asked that the slate be wiped clean and a new start made at a rental of $18,000 a year or $1,500 a month. This was the rent agreed upon under the terms of the new lease. For each of the months of July, August, and September, 1918, the petitioner accrued in its rent account an item of $1,500. On October 5, 1918, two days before the new lease was executed, the petitioner reversed the accruals of unpaid rent on its book because it believed it was no longer under any obligation to pay these amounts. Thus, *21 at the end of the year 1918 the petitioner was not entitled, in reporting its income for 1918, to deduct any amount representing payments due under the lease which was in effect up to October 1, 1918, for at that time it had already deducted on its income-tax returns for prior years more than the total amounts accrued on its books and not reversed, and more than the total theretofore paid or then believed to have been incurred.
In 1924, the taxable year before us, the petitioner agreed to pay $20,000 in settlement of the suit for unpaid rent. This amount just equaled the excess of the total accruals over actual payments, which excess accruals were reversed on October 5, 1918. The petitioner had taken $9,250 of this difference as a deduction from gross income on its 1911 return and there is no reason to hold that this amount should again be deducted for 1924. But the petitioner was never entitled to take the balance of $10,750 as a deduction from its reported gross income for any year prior to the year before us. In 1918 it honestly believed, and not without reason, that it was under no obligation to pay this amount. It reversed the entries on its books accruing the liability. It never thereafter admitted any liability to pay. But in 1924 it definitely agreed to pay in order to compromise and settle a law suit. It was, therefore, proper in that year to accrue this amount on its books and to deduct it on its return.
The $9,000 which the Commissioner added to the petitioner’s income for the year 1924, representing the difference between the balance of unpaid rent claimed by the lessor and the amount for which the suit was settled, had never been accrued as a liability on the petitioner’s books and the petitioner was never entitled to deduct this amount in computing its income. This amount was not income to the petitioner in the year 1924.

Judgment will be entered under Rude 50.